700 So.2d 142 (1997)
Santiago MARTINEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1243.
District Court of Appeal of Florida, Fifth District.
October 10, 1997.
James B. Gibson, Public Defender, and Nancy Ryan, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Michael D. Crotty, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, Chief Judge.
Santiago Martinez was convicted of burglary of a dwelling and dealing in stolen property in case number 95-2572. In a separate proceeding, number 95-3015, Martinez pled nolo contendere to charges of armed burglary, grand theft and carrying a concealed weapon. Martinez now appeals his conviction for burglary of a dwelling, arguing that his offense should be reduced to burglary of a structure because the garage he burgled was not a dwelling within the meaning of section 810.02, Florida Statutes (1995). We agree and reverse.
*143 The burglary of a dwelling conviction was the result of Martinez's theft of a sander from the garage of a Sanford man's home. The victim testified at trial that a driveway ran from the street to his two-car garage, which was located between his home and the home next door. The garage was not attached to the home and had no door. A walkway ran between the two structures. A fence which was otherwise not described traced only the north and east borders of the property; the garage was located at the south end of the property. The victim acknowledged that his property, including the garage, was not enclosed, and that only land separated the garage from the nearest home to the south.
Relying on the decision of the Supreme Court of Florida in State v. Hamilton, 660 So.2d 1038 (Fla.1995), Martinez sought a judgment of acquittal on the burglary of a dwelling charge, arguing that the garage was not part of the home's curtilage. The prosecutor successfully argued that Hamilton's enclosure requirement applied only to grounds, not outbuildings.
Section 810.011, Florida Statutes (1993) defines "dwelling" as:
a building or conveyance of any kind, either temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof.

§ 810.011(2), Fla. Stat. (1993) (emphasis added).[1] Like many of its common law counterparts, the word "curtilage" has undergone an evolution. Of its historic meaning, it has been said:
The word originally signified the land with the castles and outhouses, inclosed often with high stone walls, and where the old barons sometimes held their court in the open air, and the curtilage was originally known as the fenced-in area surrounding a castle.
25 C.J.S. Curtilage (1966). The modern trend, however, has been to enlarge the common law definition to include land and structures near enough to a dwelling to deserve the dwelling's protection. Id. In State v. Hamilton, 660 So.2d 1038, the Florida supreme court was faced with choosing between the original common law definition of the word, which required some form of enclosure, and the more contemporary meaning. Principally relying on the strict construction required for criminal statutes, the supreme court concluded that the common law definition should apply. Id. at 1044. As a result, "some form of an enclosure [is necessary] in order for the area surrounding a residence to be considered part of the `curtilage' as referred to in the burglary statute." Id.; see also L.K.B. v. State, 677 So.2d 925 (Fla. 5th DCA 1996).
Hamilton does not instruct what might constitute "some form" of an enclosure. The facts in the Hamilton case involved a yard bounded only by "several unevenly spaced trees," which the court found not to meet the "enclosure" requirement. The state, apparently having abandoned its original argument that Hamilton does not apply to outbuildings, now argues that because two sides of the victim's property were fenced, and a third was bordered by a street, the property was sufficiently demarcated from the surrounding land so as to be enclosed. We cannot agree.
First, as Martinez argues, "to enclose" commonly means "to surround on all sides." The American Heritage Dictionary 451 (2d college ed.1991). It is plain that this property was not "enclosed."
Second, under the common law approach, it is not sufficient to demarcate the property from surrounding land. The essence of the common law offense of burglary was the invasion of the habitation at night, when slumbering residents might wake to the midnight terror of an intruder's presence. See 4 William Blackstone, Commentaries *222-23. The protection afforded the residence was extended to "all its branches and appurtenances, if within the curtilage or home-stall," *144 but not to barns, warehouses or the like, since those were not looked upon as one's castle and intrusion upon them did not present a risk of terror. Id. at *225. Under the common law, merely identifying the boundaries of a property, as opposed to erecting a barrier to entry to the extended residence of the curtilage, falls short of bringing unattached structures within the curtilage of the home.[2]
Accordingly, Martinez's conviction and sentence for burglary of a dwelling is vacated and the lower court is instructed to enter a judgment of guilty of the lesser charge of burglary of a structure.[3]
REVERSED in part; REMANDED for resentencing.
HARRIS, J., concurring and concurring specially, with opinion.
W. SHARP, J., dissenting, with opinion.
HARRIS, Judge, concurring specially.
I agree that this case is controlled by State v. Hamilton, 660 So.2d 1038 (Fla.1995), by which the supreme court, after carefully considering the arguments for and against liberalizing (as many states have done) the common law meaning of "curtilage," came down on the side of strict construction where criminal statutes are concerned. A different rule applies in search and seizure issues.
The State urges a distinction between the "curtilage" and the outbuildings (a detached garage in this case). As the supreme court in Hamilton told us concerning the common law meaning of curtilage:
The cluster of buildings which were in reasonably close proximity to a dwelling house in England, and which were used by the dweller, together with the dwelling house, were usually encircled by a fence or other enclosure. The common ground within the enclosure was designated as the curtilage and all buildings within the curtilage were considered part of the mansion house or dwelling.
State v. Hamilton, 660 So.2d at 1041.
The court in Phillips v. State, 177 So.2d 243, 244 (Fla. 1st DCA 1965), also seems to distinguish between the grounds and the outbuildings by holding that a curtilage "has a distinctive meaning in legal parlance" and "has been described as the yard, courtyard, or piece of ground lying around or near a dwelling house."
Since the Hamilton court was dealing with a motor stolen from a boat stored outside in the back yard, the State urges that the decision does not control the issue of stealing from a detached garage since, under the common law, the outbuildings were part of the dwelling and not part of the curtilage. But that ignores the fact that the outbuildings must be within the curtilage in order to be considered a part of the dwelling. Otherwise, without the curtilage, the outbuildings are merely outbuildings. No fence, no curtilage; no curtilage, no connection of the outbuildings to the dwelling.
Because of the structure of the burglary statute, however, I do not believe that the legislature intended the result in Hamilton. A "structure" under the burglary statute, in my view, was to distinguish a non-dwelling from a dwelling. That is, a structure was a building designed for non-residential purposesfor example, an office building or a service station. I do not believe the legislature contemplated that a garage used in conjunction with the family home, even if no fence existed, would be a "structure" within the burglary statute. Under that statute, both "dwelling" and "structure" are defined as "together with the curtilage thereof." Since it is difficult to conceive that buildings *145 normally associated with dwellings would have their own curtilages (that such buildings would be separately fenced from the home), I believe that the legislature thought that a detached garage ten feet from the house (as was the one in our case) and connected to the house by a walkway would be considered a part of the dwelling regardless of whether there was a perimeter fence. I agree with the supreme court's suggestion in Hamilton that the legislature should review the law in this area to make sure it is as intended.
W. SHARP, Judge, dissenting.
In my view, too much emphasis is being placed on whether there are fences or walls, and whether they encircle or enclose. Some modern households have perimeter fences; some do not. Pursuant to the majority opinion in this case, the crime of burglary of a dwelling[1] occurs if a person steals a piece of equipment from a detached garage, if there was a yard fence; but not if there was no fence. That makes little sense to me.
In my view, structures that are close to a dwelling and habitually used by the householders for family and living purposes, whether attached or detached from the main dwelling, should be considered to be part of the dwelling. Examples from the past would be outhouses, spring houses and kitchens; and from the present, greenhouses, studios or workshops, and boathouses. These places are where the residents of the dwelling live and carry on their daily and nightly activities, and where they need enhanced protection from intruders. Whether there are fences and whether the buildings are detached appears to me to be not determinative, where as in this case, the garage was only 10 feet from the dwelling.
NOTES
[1] Martinez points out that since Hamilton was decided, the legislature has amended the definition of dwelling only to include "any porch" within the meaning of the term. See § 810.011(2), Fla. Stat. (Supp.1996); Ch. 96-388, § 47, Laws of Fla. The legislature took no action to modify the rule of Hamilton, however.
[2] J.E.S. v. State, 453 So.2d 168 (Fla. 1st DCA 1984), relied upon by the state for its holding that a driveway of a home is within the home's curtilage, is no longer valid authority in light of Hamilton. Since Hamilton, a distinction appears to exist between the definition of "curtilage" applied in the context of burglary and that used in the context of search and seizure. See Abel v. State, 668 So.2d 1121, 1123 n. 2 (Fla. 2d DCA 1996).
[3] Also, because 14 points were added to Martinez's scoresheet in case 95-3015 for the burglary of a dwelling conviction, instead of the 2.4 points which would be applicable to a burglary of a structure conviction, defendant must be resentenced in that case as well.
[1] § 810.02(1), Fla. Stat.